TOBIAS *v.* MICHIGAN CENTRAL RAILROAD CO.

RAILROAD COMPANIES—ACCIDENT AT CROSSING—AUTOMATIC BELLS —CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS.

Plaintiff's intestate was killed by a train at a highway crossing at which an electric bell, rung automatically by passing trains, was maintained by the company. Upon the occasion in question, however, the bell was out of repair, and did not ring; but an approaching train could be seen for a long distance. In an action against the company, the jury were instructed that, if the deceased had looked, he could have seen the train, and that his failure to look would, if it were not for the question of the bell, constitute contributory negligence precluding a recovery; that it was the duty of the deceased to be cautious and careful in approaching the crossing, and that the presence of the bell did not diminish the care required; and that it was for the jury to say, in view of all the circumstances, how far, if at all, he was authorized to rely upon the bell. *Held*, that the instructions were not open to the objection that the right of the deceased to rely in any degree upon the ringing of the bell was eliminated.

Error to Ingham; Person, J.    Submitted June 18, 1896.    Decided July 28, 1896.

Case by Esther J. Tobias, administratrix of the estate of James Tobias, deceased, against the Michigan Central Railroad Company, for the alleged negligent killing of plaintiff's intestate. From a judgment for defendant, plaintiff brings error. Affirmed.

*Smith & Lee* and *Black & Dodge*, for appellant.

*M. V. & R. A. Montgomery*, for appellee.

MOORE, J. This case has been in the court before. It is reported in 103 Mich. 330, where a very complete statement of the facts may be found, except some additional testimony which was offered upon the second trial in relation to the electric bell at the crossing. A brief statement of that testimony, read in connection with the statement contained in the case as reported in 103 Mich., will make a full statement of the case unnecessary here.

The accident to Mr. Tobias occurred October 30, 1891. Mr. McKim testified that he knew of there being an electric bell at the crossing at that time; that it had been there over a year; that it was operated by a wire from a battery about 80 rods away; that, when the bell was in order, the approaching train would ring it; that sometimes it would ring and sometimes not, depending upon whether it was in working order; that it began to ring when the train was 80 rods away, and would ring as long as the train was crossing the instrument, but did not ring after the train crossed the highway going south; that the bell made a loud noise,—could hear it 60 rods away, frequently; that he and his son were at work near the crossing on October 30th; that several trains passed while he was there, and the bell did not ring. He testified that there was a great deal of travel on that street; that he learned of the accident, and went down to the crossing after the train went south, 20 minutes or so later; that it was dark when the train went south. On cross-examination he testified that he had lived five years within 40 rods of the crossing; that the bell did not ring the day of

the accident, when trains passed; that there had been times before when it was out of repair, and did not ring; that a long train would make it ring longer than a short one; that it would sometimes ring until the train reached the crossing, and sometimes not; that sometimes the bell rang and sometimes not, which was a fact pretty well known to a good many; that Mr. Tobias lived two miles away, and passed over the crossing two or three times a week; that the bell had been out of repair two days; that he saw Mr. Tobias pass there the day of the accident. His son gave substantially the same testimony.

The assignments of error all relate to the charge of the court. It is contended by counsel for appellant that the charge of the court to the jury left no room for recovery; that it amounted to a direction to find for the defendant; that it eliminated any right of the deceased to in any degree rely upon the ringing of the electric bell to warn him of the approach of the train; that, in short, the court told the jury it was the duty of the deceased to look and listen on approaching the crossing, or he was guilty of negligence; that if he had looked he could see the approaching train, and that it was certain on the record he did not look, and that the presence of the electric bell would not excuse him from looking. So far as it is necessary to quote the charge to a proper understanding of the case, it reads as follows:

"*First*. A party, to recover for the injuries caused by the negligence of another, must, as I have stated, be free from fault. In determining the alleged negligence of the company and the question of whether Mr. Tobias was negligent or not, you must take into consideration all the facts and circumstances of the case, the character of the crossing, of the road, and everything connected with the matter. It does appear as a matter of fact in the case that at certain points Mr. Tobias could have seen the approaching train from the north. The evidence as to those points and distances is probably plainly in your minds. He evidently did not look to the north with as much care and caution as would have been necessary if the electrical bell had not been there. Were

it not for the question of that electrical bell in this case, under the opinion of the Supreme Court filed in this case at a time when it was before that court, it would be my duty to say to you that Mr. Tobias was negligent in not looking, and to take the case from you. But the electric bell brings into the case another question that the courts cannot decide, and that can be decided only by a jury.

"I do not want you to understand that the presence of that electric bell diminished the caution or care required of an approaching traveler, for it did not. A traveler must be cautious; a traveler must be careful. But it brings before you the direct question whether, under the circumstances of this case, in making that crossing, he did or did not exercise that care and caution which an ordinarily prudent man would have exercised under all the circumstances. In other words, it brings before you the question of how far and how much he was authorized to rely upon the bell. If the electric bell rang, then the company performed its full duty, and he could not recover in this case; if it rang so that he heard it, and performed the function of warning, then I can conceive of no excuse for his getting injured. If he knew or understood that the electric bell was liable to get out of order, and to fail in an emergency for which it was put there, then it would not have been prudent for a man to rely upon it, and he could not have prudently relied upon it. In such a case I could see no excuse for the injury. The question comes up under these circumstances: Did the electric bell fail to ring? Did it fail to give him warning either by fully or partially ringing? Was he ignorant of the fact that the bell was liable to fail, and did he rely upon it? If you find these facts to be true,—that the bell failed to give warning, that he didn't know that it was liable to fail, and that he relied upon it,—then the question comes up for you to determine how far—whether, as a reasonably prudent man, he should have relied upon the bell at all, and, if he should, how far, as a reasonably prudent man, should he have relied upon it.

"And it amounts to this— Of course, it is a case where there was no eyewitness to the immediate casualty. We have not the testimony from the lips of living witnesses as to just how he approached the crossing, nor as to just what the circumstances at the immediate time of the cas-

ualty were. We have not the facts from the lips of living witnesses. And although the burden of proof is upon the plaintiff to show that Mr. Tobias exercised due care, yet, under the law of this State, in the absence of witnesses to the occurrence, it is presumed that the deceased was in the exercise of reasonable and ordinary care. But testimony from living witnesses is not the only testimony in a case. Facts, surroundings, circumstances are testimony in a case, just as strong sometimes, and sometimes stronger, perhaps, than the testimony of living witnesses. And if the facts and circumstances of the case, as you find them, are inconsistent with the exercise of due care upon the part of Mr. Tobias, then his administratrix cannot recover.

"For instance, I said to you that it was the duty of a man to look and listen. It is. It was in this case. Had there been nothing else upon which he had a right to place a reliance, had there been no other point to which his attention could have been reasonably directed in the exercise of prudence, then it would have required that he look to the north; look after he came to the right of way; and, if he had looked at that time, he could have seen the approaching train, because the testimony shows that its headlight shone. It would not have been prudent to cross, had there been no electric bell, without looking to the north. That is certain. That I can say as a matter of law. Therefore we know that he could not have looked, because, if he had, he would have seen the train. That is an illustration. Judge the whole case, taking all the things together. You are to determine whether the presence of the electric bell was to be relied upon by him; as I have stated before, whether he acted as a prudent, reasonable man in relying upon it; and whether he relied upon the electric bell any further than a reasonably prudent and cautious man would have done, under the circumstances. If you find that the railroad company was negligent in the respect mentioned, and that Mr. Tobias was not negligent, and did not contribute to the negligence, your verdict will be for the plaintiff. If you find the railroad company was not negligent, or that Mr. Tobias himself was guilty of contributory negligence, your verdict will be for the defendant. If you reach a verdict for the plaintiff, then comes the question of damages to be awarded."

We do not think this charge sustains the contention of counsel. It fully and fairly presented to the consideration of the jury the law as applicable to the facts proven and the theories of the respective counsel.

The judgment is affirmed.

The other Justices concurred.